J-S23031-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| | : | |
| TYRONE HARRIS, | : | |
| | : | |
| Appellant | : | No. 1494 EDA 2014 |

Appeal from the PCRA Order Entered April 25, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at Nos: CP-51-CR-0604471-1996

BEFORE:    DONOHUE, SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:                    **FILED JUNE 03, 2015**

Tyrone Harris (Appellant) appeals from the order which dismissed his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

In 1997, Appellant was sentenced to life imprisonment without the possibility of parole after a jury convicted him of the first-degree murder of Herbert Washington.  This Court affirmed Appellant's judgment of sentence, and our Supreme Court denied allowance of appeal.  ***Commonwealth v. Harris***, 731 A.2d 194 (Pa. Super. 1998) (unpublished memorandum), *appeal denied,* 753 A.2d 815 (Pa. 2000).  Appellant's first PCRA petition resulted in no relief.

On March 23, 2005, Appellant filed *pro se* his second PCRA petition, which was amended by appointed counsel on March 21, 2006.  The PCRA court dismissed the petition as untimely filed and meritless; vacated the

*Retired Senior Judge assigned to the Superior Court.

dismissal order; gave the required notice of intent to dismiss the petition without a hearing; and, on March 1, 2007, entered another order dismissing Appellant's petition.

Appellant timely filed a notice of appeal. The PCRA court ordered Appellant to file a statement of errors complained of on appeal. Although Appellant filed a statement, the PCRA court "inadvertently failed to acknowledge" it, PCRA Court Opinion, 7/26/2014, at 2 n.1, and filed an opinion indicating that Appellant waived all objections by failing to comply. By order of June 11, 2008, this Court remanded the case for 60 days and required the PCRA court to file a corrected opinion addressing the issue raised in Appellant's concise statement.

While awaiting the new PCRA court opinion, Appellant filed, *pro se*, multiple applications for remand based upon after-discovered evidence. Eventually, counsel filed a similar motion and, in support thereof, attached the affidavits of Zakee Hamilton, Bonnie Colmon, and Tyrone Bullock. This Court denied the motion without prejudice to seek the requested relief in his brief.

On May 11, 2009, this Court ordered the PCRA court to advise this Court within 20 days of the status of its compliance with the June 11, 2008 order. The PCRA court filed its opinion on June 16, 2009, in which it stated its determination that Appellant's petition, as amended, was untimely filed.

On April 13, 2010, this Court reversed. This Court held that Appellant's "after-discovered evidence fulfills the requirements to apply an exception to the one-year time limit and warrants a hearing." *Commonwealth v. Harris*, 998 A.2d 1006 (Pa. Super. 2010) (unpublished memorandum at 1). Accordingly, the case was remanded for an evidentiary hearing on the three affidavits Appellant submitted in support of his after-discovered evidence claim.

After many continuances, the PCRA court held a hearing on July 19, 2013, at which Zakee Hamilton testified as to the substance of his affidavit. At the close of the hearing, the PCRA court granted Appellant funds to hire an investigator to locate the other witnesses. N.T., 7/19/2013, at 50-51. It was determined subsequently that Tyrone Bullock died in 2009 and that Bonnie Coleman was not available to testify.

On April 25, 2014, the PCRA court dismissed Appellant's petition on the grounds that (1) it was filed untimely, and (2) the verdict would not be different if Appellant were granted a new trial. Appellant timely filed a notice of appeal. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. On appeal, Appellant challenges both of the PCRA court's bases for dismissing his petition.

> On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support

for the findings in the certified record. The PCRA court's factual determinations are entitled to deference, but its legal determinations are subject to our plenary review.

*Commonwealth v. Nero*, 58 A.3d 802, 805 (Pa. Super. 2012) (internal citations and quotation marks omitted).

To be entitled to relief under the PCRA on [the basis of exculpatory after-discovered evidence], the petitioner must plead and prove by a preponderance of the evidence [t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced. As our Supreme Court has summarized:

To obtain relief based on after-discovered evidence, [an] appellant must demonstrate that the evidence: (1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted.

The test is conjunctive; the [appellant] must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted. Further, when reviewing the decision to grant or deny a new trial on the basis of after-discovered evidence, an appellate court is to determine whether the PCRA court committed an abuse of discretion or error of law that controlled the outcome of the case.

*Commonwealth v. Foreman*, 55 A.3d 532, 537 (Pa. Super. 2012) (internal citations and quotation marks omitted).

Appellant first claims that the PCRA court erred in holding that his claim was untimely filed because he failed to prove that he could not have

obtained the evidence prior to the close of trial. We agree that the PCRA court erred in so holding.

"'[A] court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter.'" **Commonwealth v. King**, 999 A.2d 598, 600 (Pa. Super. 2010) (quoting **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995)). Here, a panel of this Court held that

> [Appellant] satisfied the prongs of the after-discovered [evidence] rule because he could not have known of witnesses to the shooting who were not interviewed by police or had not come forward on their own. The testimony of the three witnesses is not cumulative or impeaching and, if believed, could change the outcome of trial.

**Harris**, 998 A.2d 1006 (unpublished memorandum at 7). The PCRA court, therefore, acted improperly in holding, based upon Hamilton's affidavit and testimony consistent therewith, that "the witness' decision to not come forth with evidence to this crime does not make the evidence undiscoverable at the time this crime occurred" and that "Appellant has failed to prove that Zakee Hamilton's witness testimony could not have been discovered [earlier] by the exercise of reasonable diligence." PCRA Court Opinion, 6/26/2014, at 8, 7. The law of the case was that Hamilton's evidence was not discoverable earlier, and the PCRA court lacked the power to hold otherwise. However, this error does not necessarily entitle Appellant to relief.

The question that the PCRA court was required to answer on remand, following the evidentiary hearing, was whether Appellant Zakee Hamilton's testimony would likely result in a different verdict if presented in a new trial.

Appellant argues that a new trial is warranted because Hamilton "gave credible testimony that the decedent, Herbert Washington, was shot by Damon Elazier and not [A]ppellent." Appellant's Brief at 10. The PCRA court disagreed, offering the following explanation.

> … Zakee Hamilton testified that he was present at the scene of the crime on September 30, 1995.[12] Zakee Hamilton stated that he was walking towards the Laundromat on Germantown Avenue when he witnessed an argument between the Appellant and the deceased, Herbert Washington. Subsequently, the witness saw Damon "come out of nowhere" and shoot the victim. Actually, Zakee Hamilton's testimony aligns [in some respects] with the witness testimony presented at the Appellant's trial. Joseph Jones testified that he witnessed an argument between the Appellant and Herbert Washington over whether the decedent could sell drugs on the corner where the Appellant usually sold drugs. After Joseph Jones stopped the argument he walked away to get food from a food cart and heard a gunshot. The witness testified that when he turned around he saw the Appellant standing over Herbert Washington shooting him in the back several times. Then, Herbert Washington fell to the ground.
>
> _____
> [12] The witness testified that he was going to do laundry for his household on Saturday, September 30, 1995, at approximately 11:00 [AM]. However, the incident was noted by the Commonwealth as having taken place between 7:00 AM and 8:00 AM with the authorities arriving at 8:30 AM.
>
> After Herbert Washington was shot, the Appellant ran from the scene of the murder and Joseph Jones went to help the victim. Not only did Joseph Jones testify that he saw the

Appellant shoot the victim, but he also stated the victim provided a dying declaration when he said, "I cannot believe Blue [Appellant] shot me." Immediately after the victim was taken away by an ambulance, Joseph Jones called the victim's grandmother from a payphone to tell her Herbert Washington had been shot, by "Blue." Coincidentally, Joseph Jones never testified to seeing Damon Elazier at the scene of the crime or identified Damon Elazier as the shooter nor was Damon Elazier implicated by law enforcement in any way.

Yet, after Zakee Hamilton met the Appellant in the Somerset State Correctional Institution and ten (10) years after this murder took place, he decided to come forward with information regarding the real shooter of Herbert Washington.[19] Zakee Hamilton testified that he was not friends with the Appellant and only knew him from his neighborhood. Nonetheless, he testified that when he saw the Appellant in the gym of Somerset State Correctional Institute, he went up to him to talk and update him on what was going on in the neighborhood. The credibility and integrity of Zakee Hamilton's testimony was weakened by inconsistencies that were evident to this court. For example, Zakee Hamilton had previously stated that "nobody go around talking like that" regarding conversations about people from his neighborhood being charged with murder. However, Zakee Hamilton testified during the first actual conversation with the Appellant, they began to talk about their charges and the witness decided to reveal that he knew the Appellant had not committed the crime.

_____

[19] It should be noted that Zakee Hamilton testified that he was scared of Damon because of his known violent behavior and said this was a reason that he never came forward with this eyewitness testimony. However, Zakee Hamilton also testified as a 14 year-old child he stood and watched from across the street as Damon Elazier shot the victim several times[, w]hile others ran as the shots were fired, including the Appellant. Additionally, Zakee Hamilton was aware that Damon Elazier passed away in 1998 and still did not come forward with this testimony. Again, this court found the integrity of Zakee Hamilton's testimony at the evidentiary hearing, to be lacking.

Moreover, Zakee Hamilton claimed that he and the Appellant did not discuss the murder any further.[23] Even though Zakee Hamilton placed both the Appellant and Damon Elazier at the scene of the murder, no other witness at the Appellant's actual trial mentions Damon Elazier being at the scene of the crime or the shooter in this murder. Since Damon Elazier is now deceased, it is impossible to verify any of the alleged eyewitness testimony presented by Zakee Hamilton. Coincidently, Zakee Hamilton was aware of the passing of Damon Elazier since approximately 1998.

_____

[23] The witness provided further inconsistent testimony when he testified that he told the Appellant he knew the Appellant did not commit the murder, but later testifie[d] that he and the Appellant never discussed the murder. It does not seem likely to this court that in a conversation about the murder that neither the witness nor the Appellant mentioned who the actual shooter was. The witness went on to testify that he by his own volition decided to go to the law library, and take the proper steps to reveal this information in order to help the Appellant. Yet, the witness had this information for ten (10) years prior to their meeting and never felt compelled to divulge his version of events that took place on September 30, 1995.

* * *

Again, the testimony presented by Zakee Hamilton at the evidentiary hearing did not seem reliable or consistent with any testimony that was presented at the actual trial. Joseph Jones was not only a spectator to this occurrence but directly involved in the argument prior to the shooting. Additionally, the deceased in this case provided a dying declaration to Joseph Jones; holding Blue (Appellant) responsible for the shooting. …[T]here has been no other witness that testified to Damon Elazier being at the scene of the crime…. Furthermore, when [the PCRA] court viewed the integrity of the alleged after-discovered evidence, the motive for offering the evidence and the overall strength of Zakee Hamilton's testimony, it does not compel a new verdict in this matter or warrant a new trial. …

- 8 -

PCRA Court Opinion, 6/26/2014, at 10-14 (some footnotes and unnecessary commas omitted).

The PCRA court's factual determinations are supported by the record, and we discern no error of law in its conclusion that a new trial is unwarranted by Appellant's evidence. *See*, *e.g.*, *Commonwealth v. Abu-Jamal*, 720 A.2d 79, 97 (Pa. 1998) (affirming denial of relief where "the PCRA court explicitly found [the witness's] testimony to be incredible and, accordingly, concluded as well that such testimony was not likely to have altered the verdict and thus, did not establish the fourth factor necessary to meet the test for 'after-discovered evidence.'"). Therefore, we affirm the PCRA court's order denying Appellant relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 6/3/2015